UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
JR CATERERS INC.,

                              Plaintiff,                    Civil Action No.
                                                               12 CV 7073 (LLS)

      -against-

NEW YORK CITY CENTER, INC.

                              Defendant.

-------------------------------------------------------X

<u>REPLY MEMORANDUM</u>

**ARGUMENT**

**THE DEFENDANT IS PRECLUDED FROM ASSERTING A FAIR USE FIRST AMMENDMENT AFFIRMATIVE DEFENSE.**

The Defendant entered into the October 6, 2011 Settlement Agreement for the purpose of resolving the Plaintiff's infringement claim and avoiding litigation.

Pursuant to the Settlement Agreement the Defendant received a license for limited use of the COTTON CLUB mark under certain conditions which included an obligation not to use the words COTTON CLUB in connection with any performance after November 22, 2011.

In general, a party entering into a settlement agreement with…respect to a trademark will be held to his contract unless enforcement of the contract would result in injury to the public through confusion. *Idaho Potato Comm'n v. M&M Produce Farm & Sales*, 335 F.3d 130, 136 (2d Cir. N.Y. 2003), 136 (2d Cir. N.Y. 2003), cert den 124 S. Ct. 2006 (2004), citing *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co*., 103 F. Supp. 2d 711, 738 (S.D.N.Y. 2000 and *Marshak v. Green*, 505 F. Supp. 1054, 1060-61 (S.D.N.Y. 1981).

A licensee is estopped from asserting challenges to its licensor's trademark in existence up to the expiration of the license but not claims which arose thereafter. *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.),* 914 F. Supp. 964, 993 (S.D.N.Y. 1995).

The fair use affirmative defense which Defendant seeks to now raise was available to Defendant on October 6, 2011 when the Settlement Agreement was entered into and the Defendant is estopped from now raising this issue which could have been then litigated.

## THE DEFENDANT IS PRECLUDED FROM ASSERTING THE AFFIRMATIVE DEFENSE THAT THE PLAINTIFF'S MARK ARE DILUTED

It is evident that affirmative defense that the Plaintiff's mark have been diluted is also barred by the estoppel doctrine as it relates to alleged occurrences prior to the October 6, 2011 Settlement Agreement.

## LIKELIHOOD OF CONFUSION IS IRREFUTABLE

Although Plaintiff has established a likelihood of confusion under the Polaroid factors, a showing of a likelihood of confusion is submitted to be unnecessary in the instant case. As stated in *Lee Myles Auto Group, LLC v. Fiorillo,* 2010 U.S. Dist. LEXIS 91582 *(S.D.N.Y. Aug. 25, 2010)*:

> Not every case calls for the Court to "slavishly recite the litany of all eight Polaroid factors . . . ." *Orient Express Trading Co., Ltd. v. Federated Dep't Stores. Inc*., 842 F.2d 650, 654 (2d Cir. 1988). "When an ex-licensee continues to use a mark after its license expires, likelihood of confusion is established as a matter of law. *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009).

All promotional and informational materials both in print and on-line relating to the November 2011 licensed performances included prominent reference to the Plaintiff and included a reproduction of the Plaintiff's registered mark (Beatty declaration Exhibit 14) "Special thank you to the Cotton Club for the use of its name".

Prominent reference to the Plaintiff appeared in a large poster displayed in the entryway at Lincoln Center, (Beatty declaration, Exhibit 15) "Special thank you to the Cotton Club" and in the Playbill for the licensed performances. (Beatty declaration, Exhibit 16) "Special thank you to the Cotton Club".

Citing *Lee Myles, supra,* the court in *MyPlayCity, Inc. v. Conduit Ltd.,* 2012 U.S. Dist. LEXIS 47313, 56-59 (S.D.N.Y. Mar. 30, 2012)*,* stated:

> …confusion is "almost inevitable because consumers have already associated the formerly licensed infringer with the trademark owner." *L & L Wings*, 676 F. Supp. 2d at 188 (citing *Volpone Stamp*, 107 F. Supp. 2d at 399; *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986)). Consequently, application of the *Polaroid* factors to such a situation is "largely superfluous." *Lee Myles Auto Grp. v. Fiorillo*, No. 10 Civ. 6267 (PKC), 2010 U.S. Dist. LEXIS 91582, 2010 WL 3466687, at *4 (S.D.N.Y. 2010); *L & L Wings*, 676 F. Supp. 2d at 188; *Volpone*, 107 F. Supp. 2d at 400.

## IRREPARABLE INJURY WILL RESULT IN THE ABSENCE OF A PRELIMINARY INJUNCTION

Irreparable harm exists in a trademark case when the party seeking the preliminary injunction shows that it will lose control over the reputation of its trademark pending trial. *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 403-404 (S.D.N.Y. 2000).

Pursuant to the Settlement Agreement, the Plaintiff exercised control over the Defendant's use of the COTTON CLUB mark and in the absence of a preliminary injunction, the Plaintiff will lose control over the reputation of its COTTON CLUB mark.

As a former licensee, Defendant's continued use of the COTTON CLUB mark in violation of the Settlement Agreement invariably threatens injury to the economic value of the goodwill and reputation associated with the Plaintiff's COTTON CLUB mark. *Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38, 43 (2d Cir. 1986).

In *Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 651 F. Supp. 2d 72, 85 (S.D.N.Y. 2009), the Defendant had continued use of a mark after termination of its license.  The court indicated that if the *Ebay* standards applied, they were met because a showing of actual success on the merits and irreparable injury had been made in view of the unauthorized use of a mark by a former licensee and that such unauthorized use invariably threatened economic injury to the goodwill and reputation associated with the licensor's mark, citing *Church of Scientology, supra*.

## PLAINTIFF HAS NO ADEQUATE REMEDY AT LAW

Since the Defendant will continue to infringe the Plaintiff's COTTON CLUB mark and continue its breach of the Settlement Agreement in the absence of a preliminary injunction, it is evident that the Plaintiff has no adequate remedy at law and an injunction is the only appropriate remedy.

## THE BALANCE OF HARDSHIPS TIP IN THE PLAINTIFF'S FAVOR

In view of the Defendant's full understanding of the terms of the Settlement Agreement and its obligation not to use the words COTTON CLUB after November 22, 2011, any hardship of the Defendant associated with the issuance of a preliminary injunction would be a result of the Defendant's willful violation of the Settlement Agreement and willful infringement of the Plaintiff's mark.

After requesting and not receiving a modification to the Settlement Agreement, the Defendant nevertheless took it upon itself to ignore the Settlement Agreement with impunity. The Defendant cannot now rely upon its own willful misconduct as a basis for claiming hardship which is indeed self-inflicted.

The only hardship the Defendant will suffer is to comply with the law, while the Plaintiff faces continued loss of goodwill if an injunction does not issue. *Gayle Martz, Inc. v. Sherpa Pet Group*, LLC, 651 F. Supp. 2d 72, 85 (S.D.N.Y. 2009)

Although the Defendant asserts that it contacted the Plaintiff in May for a modification of the Settlement Agreement which was not granted, it is undisputed that the Plaintiff did not become aware of Defendant's willful violation until August 22, 2012 (Beatty declaration, paragraph 17).

## PUBLIC POLICY

The prevailing public policy is to enjoin a former licensee's continued use of a licensed mark.

> …the public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increases the probability of consumer confusion. A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder. When such party, as Defendants here, loses its authorization yet continues to use the mark, the potential for consumer confusion is greater than in the case of a random infringer. Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public. *Burger King Corp. v. Mason*, 710 F.2d at 1493; United States *Jaycees v. Philadelphia Jaycees*, 639 F.2d 134 (3d Cir. 1981); *Professional*

*Golfers Ass'n. v. Bankers Life & Casualty Co.*, 514 F.2d 665 (5th Cir. 1975); McCarthy, Trademarks and Unfair Competition § 257 (2d ed. 1984).

*Church of Scientology International v. Elmira Mission of Church of Scientology*, 794 F.2d 38 (2d Cir. N.Y. 1986)

Further public policy considerations include those for the resolution of disputes through settlement, the enforcement of settlement agreements, and the avoidance of public confusion.

> A preliminary injunction in this case "is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001); see also *S & R Corp.*, 968 F.2d at 379 ("In a trademark case, the public interest is 'most often a synonym for the right of the public not to be deceived or confused.")…the public has an interest in requiring parties to honor their contractual obligations. See *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)("[I]ssuing the preliminary injunction would hold Defendants to the terms of the bargain they entered into…

*Dunkin' Donuts Franchised Rests. LLC v. ABM Donuts, Inc*., 2011 U.S. Dist. LEXIS 139074, 21-22 (D.R.I. Oct. 4, 2011).

## CONCLUSION

A preliminary injunction should issue.

Dated:  October 11, 2012               NATTER & NATTER
                                       501 Fifth Avenue, Suite 808
                                       New York NY 10017
                                       (212) 840-8300


                                       By:    s/ Seth Natter
                                              Seth Natter (SN4913)
                                              s.natter@natter-natter.com

                                              Benjamin Natter (BN1115)
                                              b.natter@natter-natter.com